FILED

06/20/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0426

DA 16-0426

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 151N

IN RE THE MARRIAGE OF:

AMY L. McKITTRICK,

      Petitioner and Appellee,

   and

LONNEY S. McKITTRICK,

      Respondent and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 14-1098
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Daniel G. Gillispie, Gillispie Law Office, Billings, Montana

      For Appellee:

         Jock B. West, West Law Firm, Billings, Montana

Submitted on Briefs:  May 10, 2017

Decided:  June 20, 2017

Filed:

_____
               Clerk

Justice Dirk M. Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Lonney S. McKittrick (Lonney) appeals the order of the Thirteenth Judicial District Court, Yellowstone County, ending his 15-year marriage with Amy L. McKittrick (Amy). Lonney challenges the District Court's equitable apportionment of the marital estate. We affirm.

¶3 Section 40-4-202, MCA, governs the distribution of assets and property in a marriage dissolution proceeding. The statute vests the district court with broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances. *In re Marriage of Bartsch*, 2007 MT 136, ¶ 9, 337 Mont. 386, 162 P.3d 72. The standards of review for marital estate division are whether the court's findings of fact are clearly erroneous, whether the conclusions of law are correct, and whether the court abused its discretion in apportioning the estate. *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151. In dividing a martial estate, the district court must reach an equitable distribution, not necessarily an equal distribution. *Marriage of Walls*, 278 Mont. 413, 416, 925 P.2d 483, 485 (1996).

2

¶4 Lonney's argument on appeal centers on the District Court's apportionment of the money Amy inherited from her family during the final two years of the marriage. Lonney does not contest the District Court's valuation of property or the its exclusion of certain inherited stocks and real estate from the marital estate. Instead, Lonney claims the District Court failed to recognize his role as the primary income-earner during the early years of the marriage and compensate him more generously from Amy's monetary inheritance. Although Lonney asserts that he deserves a larger share of Amy's inherited money due to his significant household contributions, he cites no legal authority to support this contention.

¶5 Amy and Lonney married in 1999 in Key West, Florida, and had no children together. As an intermittently self-employed artist and service worker, Amy earned considerably less than Lonney, who testified to earning more than $50 per hour as a self-employed construction worker and handy man. The parties combined their assets from the start of their marriage. The District Court determined the parties equally contributed to the marital estate, with the exception of the gifts and substantial distributions that Amy received after 2012 from family trusts set up for her benefit.

¶6 After relocating to Billings, Amy and Lonney undertook the construction of a straw-bale home on ten acres of land beginning in 2011. Lonney devoted six months of full-time work as the general contractor and Amy contributed her labor in landscaping, painting, and other finish work. Amy's family provided a $10,000 gift to help with the down payment on the land and a $3,500 loan for finishing the home's interior. The

disbursements to Amy from her family trusts enabled the couple to pay off the construction expenses and mortgage. Describing the house as well-built and energy-efficient, the District Court valued the marital residence at $250,000.

¶7    The District Court determined the records of the couple's joint checking account provided the best evidence documenting the transfers of inherited funds from Amy's family trusts between January 2012 and September 2014 following the deaths of her father, brother, and mother. The trust distributions to Amy totaled $220,533.88. Amy also inherited shares of stock in two corporations and partial interest in two residential properties in Las Vegas, Nevada. At the hearing, Amy urged the District Court to "exempt" the stock and Nevada real estate from the marital estate. The District Court found that "Lonney made no contribution to obtaining and/or maintaining any of those items of inheritance from Amy's parents." Consequently, the District Court denominated the inherited stocks and Las Vegas properties as "non-marital property" and set the assets aside for Amy exclusively.

¶8    The District Court ordered the sale of marital home, credited Amy with $220,533.88 against the value of the house, and subtracted $35,000 from the credit to compensate Lonney for his six months of construction labor. Consequently, Amy would receive $185,533.88 from the sale and Lonney would receive $35,000. After paying off the outstanding $3,500 loan for interior finishing, the parties would split the remainder on a 50-50 basis.

4

¶9    Lonney challenges the District Court decision to credit Amy's monetary inheritance against the value of the marital home. Throughout the marriage, the parties deposited all monies each received in their joint account. This comingling of funds included the substantial disbursements Amy received from her family's trusts. Because the District Court excluded Amy's inherited stocks and Las Vegas real estate from the marital estate on the grounds that these assets had not been "comingled" with the couple's jointly held property, Lonney argues the District Court followed inconsistent reasoning when it credited Amy with the entire $220,533.88 bequest after that money had been shared by the parties during the marriage. Lonney further claims that his financial contributions to the household during the six years that Amy cared for her elderly mother enabled Amy to preserve her inheritance.

¶10    Section 40-4-202(1), MCA, requires the district court "to equitably apportion between the parties all assets and property of either or both spouses, regardless of by whom and when acquired." *In re Marriage of Funk*, 2012 MT 14, ¶ 19, 363 Mont. 352, 270 P.3d 39. The party claiming ownership of inherited property is entitled to argue that it would be equitable to award her the entirety of such property. *Funk*, ¶ 19. When dividing property acquired by inheritance, the court must consider the nonmonetary contributions to the marriage of the non-inheriting spouse, the non-inheriting spouse's role in maintaining the inherited property, and whether the overall property division serves as an alternative to maintenance arrangements. Section 40-4-202(1)(a)-(c), MCA. The statutory factors do

5

not limit the court's obligation and authority to equitably apportion the marital assets based upon the unique factors of each case. *Funk*, ¶ 19.

¶11 The District Court made specific factual findings on each factor set forth by § 40-4-202, MCA. When dividing property acquired prior to the marriage, the District Court found the couple's pooling of resources resulted in no traceable assets that could be individually apportioned. Although Lonney demonstrated a higher earning capacity than Amy, income from Amy's inherited property equalized the parties' post-dissolution financial status. The District Court awarded no maintenance or attorney's fees.

¶12 Pursuant to § 40-4-202, MCA, all assets Amy inherited during the marriage became part of the marital estate, subject to equitable apportionment by the District Court. Although it mistakenly characterized Amy's inherited stocks and devised real estate as "non-marital property," the District Court nonetheless valued and equitably apportioned it as marital property, expressly finding that Lonney did not contribute in any way to obtaining or maintaining those assets. In addition, the District Court easily traced the origin of monetary distributions from Amy's family trusts into the joint bank account during the final years of the marriage, and reasonably credited Amy with an equal value in the marital home. The District Court made comprehensive findings of fact that are not clearly erroneous. We find no abuse of discretion in the District Court's apportionment of Amy's inherited property to her. We affirm the District Court's distribution of marital property.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents

no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.


/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT