

FILED

08/31/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0518

DA 20-0518

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 219N

IN RE THE MARRIAGE OF:

THERESA CARBAH,

      Petitioner and Appellee,

and

CHRISTOPHER CARBAH,

      Respondent and Appellant.

FILED

AUG 3 1 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:     District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DR 18-100
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Karl Knuchel, Knuchel and Oden, P.C., Livingston, Montana

      For Appellee:

          Kirsten Mull Core, Law Office of Kirsten Mull Core, P.C., Bozeman, Montana

          Submitted on Briefs: July 21, 2021

          Decided: August 31, 2021

Filed:

          _____
                     Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Christopher Carbah ("Kit") appeals the Sixth Judicial District Court's Findings of Fact, Conclusions of Law and Interim Order ("Order") dissolving his marriage to Theresa Carbah ("TC") and dividing their marital property. Kit argues that the District Court abused its discretion by failing to address evidence regarding the parties' business failures, by granting funds from sale of the marital house and business condo to TC, and by ordering Kit to pay attorney fees. We affirm.

¶3 Kit and TC married in 2009 in Boise, Idaho. Kit owned a construction contracting business, Tri-State Exterior Solutions, LLC ("Tri-State"), and upon marriage made TC a fifty-percent owner. The couple also jointly owned a property management company, TSES Properties, LLC ("TSES"). The couple soon moved to the Bozeman area. In July 2018, TC filed for separation. The District Court entered a temporary economic restraining order prohibiting the parties from selling, encumbering, or otherwise disposing of marital property. The parties stipulated that Kit would pay TC $1,500 per month in spousal support and that he would continue paying the expenses he currently paid,

2

including payments on the marital home's mortgage, on vehicles, and on a horse trailer. Following trial, the District Court entered its Order on August 31, 2020.[1]

¶4 The District Court made numerous findings of fact related to the history of this matter and the parties' conduct during the separation. The court found that the separation proceedings were delayed and extended numerous times by Kit's behavior. Kit routinely failed to provide or provided incomplete discovery responses and failed to abide by the stipulation he entered into with TC. Kit made only a few months' worth of spousal support payments, sometimes not in full, and failed to make payments on marital debts. These actions led not only to the devaluation of the marital estate, but also to several hearings at which the District Court found Kit in contempt. Kit, however, failed to comply with the contempt orders. Kit also refused to transfer property to TC for her to sell; "traded," sold, or otherwise disposed of marital property in exchange for services; and paid for his personal attorney with Tri-State funds. Of the numerous orders entered during the proceedings, the District Court found that "Kit did not comply with any [court order] entirely, and some not at all." Kit does not contest this characterization of his behavior on appeal. TC, on the other hand, complied with the District Court's orders.

¶5 Throughout the proceedings, Tri-State—with which TC did not have substantial involvement despite her ownership interest—owed a substantial amount of debt and failed

---

[1] The District Court entered an Interim Order because it directed counsel for TC to prepare a final decree and submit a request for attorney fees. Kit filed notice on October 2, 2020, that he did not object to the form of the final decree, though he maintained his objection to the underlying orders. He filed his notice of appeal while additional motions for contempt were pending. TC does not argue that the August 31 Order is not appealable, and we consider it a final order for purposes of dissolving the marriage and distributing the marital estate.

3

to complete or walked-off of several jobs. Kit testified that Tri-State was for all intents and purposes defunct, unable to complete jobs, likely headed into bankruptcy, and "burned to the ground." In January 2019, however, Kit—without notifying TC or the District Court—started a new contracting business, KCD Enterprises, LLC ("KCD"). Kit admitted that KCD performed the same type of contracting work as Tri-State, primarily found work through contacts initially established through Tri-State, and used Tri-State's vehicles and equipment to complete jobs, albeit smaller jobs than those for which Tri-State historically contracted. The District Court found that Kit used KCD as a vehicle to hide or otherwise transfer marital property out of Tri-State while continuing Tri-State's business— but as a sole owner and without compensating TC or assuming any of Tri-State's debts.[2]

¶6    The District Court also found that: Kit wrote a $1,000 check to TC in exchange for her agreement to reschedule a hearing he could not attend because he was on vacation, but TC could never cash the check due to insufficient funds; Kit effectively purchased real estate through his son in violation of the temporary restraining order; Kit paid for his second private attorney with KCD funds; Kit purchased a recreational vehicle in violation of the temporary restraining order; and the testimony regarding Tri-State's assets proffered by an accountant lacked credibility because it was "based on far too much self-reporting by Kit, whose reporting lacks credibility."

¶7    The District Court concluded that Kit intentionally left Tri-State to "burn to the ground," diverting its assets and business—which were part of the marital estate—to KCD;

---

[2] Despite being requested during discovery, Kit did not provide KCD's finances to TC or to the District Court until after trial.

unnecessarily duplicated the proceedings; and, even after several contempt hearings, failed to cooperate with discovery or to abide by court orders. The District Court awarded TC the remaining assets from the sales of the parties' marital residence and of a condo used for Tri-State's office and ordered that Kit personally reimburse TC for payments she received from these court-held funds.[3] It awarded Kit Tri-State, along with all its debt, and TC ownership of TSES and its smaller debt burden. The District Court also awarded TC general attorney fees for all costs she incurred during the separation, including those incurred from defending lawsuits and collection actions resulting from Kit's failure to protect encumbered marital property.

¶8     "We review a district court's findings of fact pertaining to marital property division to determine if they are clearly erroneous." *Rose v. Rose*, 2016 MT 7, ¶ 10, 382 Mont. 88, 364 P.3d 1244 (citation omitted). "Findings are clearly erroneous if: (1) they are not supported by substantial evidence; (2) the district court misapprehended the effect of the evidence; or (3) the district court made a mistake." *In re Marriage of Bartsch*, 2007 MT 136, ¶ 9, 337 Mont. 386, 162 P.3d 72 (citation omitted). "We will affirm a district court's division of property, absent clearly erroneous findings, unless we identify an abuse of discretion." *Bartsch*, ¶ 9. We likewise review for abuse of discretion a district court's award of attorney fees in a dissolution proceeding. *In re Marriage of Bee*, 2002 MT 49, ¶ 43, 309 Mont. 34, 43 P.3d 903 (citation omitted).

---

[3] The District Court held these assets to reimburse TC for expenses related to Kit's failure to provide spousal support and as reimbursement for various payments that TC made to keep property from being repossessed.

¶9 Kit argues that the District Court abused its discretion by awarding TC funds from the property sales, by failing to address record evidence regarding Tri-State's collapse and debt in awarding him sole ownership, and by ordering him to pay all of TC's general attorney fees.[4] Kit does not argue that the District Court lacked authority to make these awards and distributions, nor that they are necessarily inequitable in and of themselves. Rather, he contends the District Court abused its discretion by failing to provide findings of fact or conclusions that sufficiently explained its reasoning in support of these awards and distributions.

¶10 Section 40-4-202, MCA, requires the court to equitably apportion the parties' property and assets; this includes the equitable apportionment of marital debts, regardless of which party is responsible. *Rose*, ¶ 19 (citations omitted). Findings of fact supporting the court's apportionment need not specifically address every consideration behind the court's decision but must "be sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and the evidence presented must support them." *Rose*, ¶ 22 (quoting *Bartsch*, ¶ 33; internal quotation marks omitted). "Therefore, in order for a district court's findings to be adequate, they 'must be complete at least to the point that this Court need not succumb to speculation when assessing the conscientiousness or reasonableness of the district court's judgment.'" *Rose*, ¶ 22 (quoting *Bartsch*, ¶ 33).

¶11 We are not left to speculate the reasoning behind the District Court's property distributions. The District Court held $67,563.26 from the sales of the two properties.

---

[4] Kit does not contest that he should pay the attorney fees that TC incurred as a result of his contempts of court.

$40,498.25 was withdrawn for Kit's benefit—either to compensate TC for unpaid spousal support or to otherwise preserve the marital estate's value due to Kit's refusal to pay debts. The District Court awarded TC the remaining $27,065.01 and ordered Kit to pay TC $40,498.25—effectively awarding TC the full $67,563.26. But the District Court also concluded that Kit dissipated the marital estate by approximately $165,218.16 (not including any devaluation of Tri-State), and the court's findings support this conclusion.

¶12 Kit having failed to show clear error in any of the District Court's findings, we conclude that it was not inequitable for the court to award TC the $67,563.26. And the Order clearly refutes Kit's argument that the District Court did not consider evidence Kit was not solely responsible for Tri-State's collapse. The District Court found that Kit was not a credible witness, resulting in it discounting both Kit's testimony regarding Tri-State's fall and the accountant's testimony regarding Tri-State's finances. *See In re Marriage of Tummarello*, 2012 MT 18, ¶ 34, 363 Mont. 387, 270 P.3d 28 (citation omitted) (judgments regarding witness credibility are within the province of the district court and we will not substitute our judgment for its determinations). Finally, the District Court awarded TC sole ownership of TSES, which also was burdened by debt and essentially defunct. This was an equitable distribution notwithstanding who exactly was responsible for each business's debts. *Rose*, ¶ 19. There is substantial evidence to support the District Court's distribution of marital property, and it did not abuse its discretion. *Rose*, ¶ 22.

¶13 The District Court likewise did not abuse its discretion in awarding TC attorney fees. Attorney fees are available in a dissolution proceeding pursuant to § 40-4-110, MCA. "This Court will not disturb a district court's findings [in support of its award of

7

attorney fees] on appeal if there is substantial evidence to support those findings." *Bee*, ¶ 43 (citation omitted). The District Court found that despite his greater relative financial position, Kit rarely paid TC spousal support; that he paid his own attorneys with marital funds while TC took out loans from her father to cover attorney costs; that he never fully complied with court orders; and that he unnecessarily duplicated proceedings. These findings demonstrate the District Court's award is both reasonable and based on necessity. *Bee*, ¶ 42 (citation omitted). Kit points to no specific evidence disputing these findings, and our review of the record finds them supported by substantial competent evidence. *Bee*, ¶ 42 (citation omitted). We therefore affirm the award.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. Under applicable standards of review and based on the record evidence, Kit has not demonstrated an abuse of discretion. We affirm the District Court's August 31, 2020 Order. We decline, however, to award TC attorney fees resulting from this appeal.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

8

_____
Justices

9